1

2                          UNITED STATES DISTRICT COURT

3                              DISTRICT OF NEVADA

4    CHRISTOPHER KELLER,                      Case No. 3:22-cv-00481-ART-CLB

5                              Petitioner,

6         v.                                         ORDER DENYING
                                                  MOTION TO DISMISS
7    NETHANJAH BREITENBACH,[1] et al.,

8                              Respondents.

9

10        On August 9, 2023, counseled Petitioner Christopher Keller filed his

11   second-amended § 2254 petition. (ECF No. 20.) This matter comes before the

12   Court on Respondents' motion to dismiss Keller's second-amended petition. (ECF

13   No. 25.) Keller opposed the motion, and Respondents replied. (ECF Nos. 32, 33.)

14   For the reasons stated below, the Court denies the motion.

     **I.      BACKGROUND**

15
          The Nevada Supreme Court described the crime, as revealed by the
16
     evidence at the trial, as follows:
17
              Inside   Keller's    car,   officers   found    344.29   grams    of
18            methamphetamine, 33.92 grams of heroin, .537 grams of cocaine, a
              mixture of the three controlled substances, and a gun. The quantity
19            of methamphetamine and heroin exceed personal use levels, and the
              discovery of 1-inch by 1-inch baggies, a large amount of cash, as well
20            as a gun, fairly indicated to the officers that Keller was trafficking in
              drugs.
21
     (ECF No. 27-30 at 6.) A jury found Keller guilty of seven drug-related crimes and
22
     two counts of ownership or possession of a firearm by a prohibited person. (ECF
23
     No. 27-17.) Keller was sentenced to an aggregate term of life in prison with parole
24

25   _____

26   [1]The state corrections department's inmate locator page states that Keller is
     incarcerated at Lovelock Correctional Center. Nethanjah Breitenbach is the
27   warden for that facility. At the end of this order, this Court direct the clerk to
     substitute Nethanjah Breitenbach as a respondent for Respondent Timothy
     Garrett under Federal Rule of Civil Procedure 25(d).
28

                                            1

1    eligibility after 20 years. (*Id.* at 5.) Keller's amended judgment of conviction was

2    entered on December 12, 2017. (*Id.*) Keller appealed, and the Nevada Supreme

3    Court affirmed his judgment of conviction on October 15, 2018. (ECF No. 27-30.)

4    Remittitur issued on November 9, 2018. (ECF No. 27-31.)

5        Keller filed his *pro se* state post-conviction habeas petition on August 26,

6    2019. (ECF No. 27-37.) The state court denied Keller post-conviction relief on

7    November 2, 2020. (ECF No. 28-3.) Keller appealed, and the Nevada Court of

8    Appeals dismissed the appeal on September 28, 2021. (ECF No. 28-20.)

9    Remittitur issued on October 26, 2021. (ECF No. 28-21.) Following a motion to

10   amend the state court's order, the state court issued a new order on April 11,

11   2022. (ECF No. 28-28.) Keller appealed, and the Nevada Court of Appeals affirmed

12   on September 9, 2022. (ECF No. 28-40.) Remittitur issued on October 4, 2022.

13   (ECF No. 28-41.)

14       In his instant second-amended petition, Keller presents the following

15   grounds for relief:

16       1.   The state court violated his right to counsel of his choice.
         2.   He was denied his right to counsel when the state court did
17            not appoint new counsel even though his trial counsel was
              conflicted.
18       3.   His counsel failed to include important facts and argue key
              legal issues in his motion to suppress the evidence found in
19            his car and apartment.
         4.   His counsel failed to request an adverse inference instruction
20            based on the destruction of body camera footage.
         5.   There were cumulative errors.
21

22   (ECF No. 20.)

23   **II.    DISCUSSION**

24       Respondents argue that (1) the second-amended petition is untimely and

25   ground 4 does not relate back to a timely-filed petition, and (2) grounds 1, 2, 3,

26   4, and 5 are unexhausted. (ECF No. 25.)

27       **A.    Relation back of ground 4**

28       Respondents contend that only Keller's original *pro se* federal petition and

1    counseled first-amended petition were timely, and ground 4 of his second-

2    amended petition does not relate back to either of those petitions because it

3    "differ[s] in both time and type." (ECF No. 25 at 6–8.) Keller does not dispute that

4    his second-amended petition is untimely; rather, he contends that ground 4 of

5    his second-amended petition relates back to grounds 8 and 31 of his timely-filed

6    first-amended petition. (ECF No. 32 at 7.)

7         A new claim in an amended petition that is filed after the expiration of the

8    Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation

9    period will be timely only if the new claim relates back to a claim in a timely-filed

10   pleading on the basis that the claim arises out of "the same conduct, transaction

11   or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644

12   (2005). In *Mayle*, the United States Supreme Court held that habeas claims in an

13   amended petition do not arise out of "the same conduct, transaction or

14   occurrence" as claims in the original petition merely because the claims all

15   challenge the same trial, conviction, or sentence. *Id.* at 655–64. Rather, habeas

16   claims asserted in an amended petition relate back "only when the claims added

17   by amendment arise from the same core facts as the timely filed claims, and not

18   when the new claims depend upon events separate in 'both time and type' from

19   the originally raised episodes." *Id.* at 657. In this regard, the reviewing court looks

20   to "the existence of a common 'core of operative facts' uniting the original and

21   newly asserted claims." *Id.* at 659. A claim that merely adds "a new legal theory

22   tied to the same operative facts as those initially alleged" will relate back and be

23   timely. *Id.* at 659 n.5; *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir.

24   2013).

25        In ground 8 of his first-amended petition, Keller argued that his "trial

26   counsel was ineffective for failing to argue that the state improperly destroyed

27   evidence or lost evidence stemming from Officer J. Henry's body camera being

28   lost." (ECF No. at 12 at 22.) And in ground 31 of his first-amended petition, Keller

1    argued that his "appellate counsel was ineffective for failing to argue that the

2    district court erred by failing to dismiss the case with prejudice due to the lost

3    body camera video from Officer Henry, which would have verified Keller's version

4    of the stopping and searches of Keller, his vehicle, and his home." (*Id.* at 68.)

5    Comparatively, in ground 4 of his second-amended petition, Keller argues that

6    his trial counsel ineffectively failed to request an adverse inference instruction

7    based on the destruction of the body camera footage in violation of his Sixth and

8    Fourteenth Amendment rights. (ECF No. 20 at 12.)

9          This Court finds that ground 4 of the second-amended petition relates back

10   to grounds 8 and 31 of the first-amended petition. Although ground 4 of the

11   second-amended petition involves the failure to request an adverse inference

12   instruction, it still arises from the same core facts as grounds 8 and 31 of the

13   first-amended petition: his trial counsel erred regarding the spoilation of Officer

14   Henry's body camera footage. Indeed, the inclusion of the failure to request a jury

15   instruction regarding the spoilation—rather than just failing to argue about the

16   spoilation—merely adds a new legal theory to the same operative facts as those

17   initially alleged. Accordingly, ground 4 of the second-amended petition is timely.

18          **B.    Exhaustion of grounds 1, 2, 3, 4, and 5**

19          A state prisoner first must exhaust state court remedies on a habeas claim

20   before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This

21   exhaustion requirement ensures that the state courts, as a matter of comity, will

22   have the first opportunity to address and correct alleged violations of federal

23   constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

24   "A petitioner has exhausted his federal claims when he has fully and fairly

25   presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th

26   Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) ("Section

27   2254(c) requires only that state prisoners give state courts a fair opportunity to

28   act on their claims.")).

1        A petitioner must present the substance of his claim to the state courts,

2  and the claim presented to the state courts must be the substantial equivalent of

3  the claim presented to the federal court. *Picard v. Connor*, 404 U.S. 270, 278

4  (1971). The state courts have been afforded a sufficient opportunity to hear an

5  issue when the petitioner has presented the state court with the issue's factual

6  and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also*

7  *Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) ("Full and fair presentation

8  additionally requires a petitioner to present the substance of his claim to the state

9  courts, including a reference to a federal constitutional guarantee and a

10  statement of facts that entitle the petitioner to relief."). A petitioner may

11  reformulate his claims so long as the substance of his argument remains the

12  same. *Picard*, 404 U.S. at 277–78.

13           **1.**    **Ground 1**

14        In ground 1, Keller argues that the district court violated his right to

15  counsel of choice in violation of the Sixth and Fourteenth Amendments. (ECF No.

16  20 at 5.) Keller explains that he retained an attorney to replace his court-

17  appointed attorney, but the trial court would not allow the substitution because

18  doing so would have required a continuance. (*Id.*) Keller also included the

19  following five facts: (1) he had expressed dissatisfaction and lack of confidence in

20  his court-appointed attorney, (2) his court-appointed attorney had attempted to

21  withdraw as counsel, (3) his retained counsel had notified chambers of her

22  representation of Keller, (4) his court-appointed attorney explained to the court

23  that he lacked sufficient time to consult with Keller, and (5) the trial court erred

24  because Keller was facing a life sentence. (*Id.*)

25        Respondents contend that while ground 1 is based on similar facts as

26  claims presented during Keller's direct appeal, it has been fundamentally altered

27  due to the addition of new legal allegations. (ECF No. 25 at 9.) Specifically,

28  Respondents contend that Keller's five facts outlined above were not alleged

1   before the state courts. (*Id.*)

2   In his opening brief on direct appeal to the Nevada Supreme Court, Keller

3   argued that "the district court erred in not allowing a continuance and to allow

4   [Keller's retained counsel] to substitute in as counsel." (ECF No. 27-19.) Within

5   this ground for relief, Keller explained that he and his court-appointed counsel

6   "had a breakdown in communication" and he "even filed a bar complaint." (*Id.*)

7   The Nevada Supreme Court then thoroughly addressed this argument in its order

8   of affirmance. (*See* ECF No. 27-30 at 2–5.)

9   This Court finds that the five above-mentioned facts did not fundamentally

10  alter the claim presented on direct appeal to the Nevada Supreme Court. These

11  facts simply added details to support ground 1 and did not fundamentally alter

12  the claim. The substance of the claim remained the same: the trial court violated

13  Keller's right to choice of counsel by not allowing his retained counsel to

14  substitute in because doing so would have meant continuing the trial.

15  Ground 1 is exhausted.

16      **2.     Ground 2**

17  In ground 2, Keller argues that he was denied his right to counsel when

18  the trial court did not appoint new counsel even though his trial counsel was

19  conflicted in violation of the Fifth, Sixth, and Fourteenth Amendment. (ECF No.

20  20 at 7.) In support of this claim, Keller gave the following facts: (1) he filed a *pro*

21  *se* motion asking the court to appoint different counsel, (2) two months later, his

22  court-appointed counsel filed a motion to withdraw as counsel, explaining he had

23  difficulty communicating with Keller and Keller refused to speak to him, and (3)

24  at a subsequent hearing, Keller's court-appointed attorney explained that Keller

25  no longer wanted to see the investigator that had been hired. (*Id.*)

26  Respondents contend that while ground 2 is based on similar facts as

27  claims presented during Keller's direct appeal, it has been fundamentally altered

28  due to the addition of new legal allegations. (ECF No. 25 at 10.) Specifically,

1    Respondents contend that Keller's three facts outlined above were not alleged

2    before the state courts. (*Id.*) Respondents also argue that ground 2 may not have

3    been federalized. (*Id.*)

4         Regarding whether ground 2 has been federalized, the Nevada Supreme

5    Court cited federal law in deciding this claim during Keller's direct appeal

6    proceedings. (*See* ECF No. 27-30 at 2–3 (citing *United States v. Moore*, 159 F.3d

7    1154, 1158–1159 (9th Cir. 1998) (discussing the factors to consider regarding a

8    claim that the petitioner was denied his Sixth Amendment right to counsel

9    because of an irreconcilable conflict between himself and his attorney)).) Because

10   the Nevada Supreme Court decided the federal claim during Keller's direct appeal,

11   ground 2 is exhausted in that regard. *See Casey v. Moore*, 386 F.3d 896, 916

12   n.18 (9th Cir. 2004) ("[A] claim is exhausted if the State's highest court expressly

13   addresses the claim, whether or not it was fairly presented.").

14        Turning to Respondents' former argument, in the affirmance of Keller's

15   judgment of conviction, the Nevada Supreme Court held as follows:

16   > While Keller previously moved to dismiss his appointed counsel over
17   > eight months before trial and had field a bar complaint against him,
     > Keller's primary conflict with his appointed counsel at the time of
18   > trial was counsel's use of an investigator Keller disliked. Keller's
     > objection to appointed counsel's choice of investigator and a
19   > newfound ability to afford private counsel shortly before trial do not
     > constitute an irreconcilable conflict. *Compare Brinkley v. State*, 101
20   > Nev. 676, 678–79, 708 P.2d 1026, 1028 (1985) (characterizing
     > reasons for substituting counsel as "unnoteworthy" when due to
21   > displeasure with a lack of communication and a newfound ability to
     > afford private counsel), *and Rimer v. State*, 131 Nev. 307, 327, 351
22   > P.3d 697, 711–712 (2015) (denying motion to substitute counsel
     > where "private counsel had a different strategy and asked for a 90-
23   > day continuance"), *with Young*, 120 Nev. at 969, 102 P.3d at 576–77
     > (holding that there was "strong evidence of an irreconcilable conflict"
24   > where defendant complained about counsel five times to the court,
     > moved to substitute counsel twice, and counsel disobeyed a court
25   > order to visit the defendant weekly.

     (ECF No. 27-30 at 3.)
26
          Based on the Nevada Supreme Court's holding, which discusses Keller's
27
     *pro se* motion and issues with his court-appointed counsel's investigator, this
28

7

1      Court finds that two of the three above-mentioned facts were addressed by the

2      Nevada Supreme Court. This Court also finds that the remaining fact that Keller's

3      court-appointed counsel filed a motion to withdraw did not fundamentally alter

4      the claim presented on direct appeal to the Nevada Supreme Court. This fact

5      merely added further support for ground 2 and did not fundamentally alter the

6      claim. The substance of the claim remained the same: Keller was denied his Sixth

7      Amendment right to counsel because of an irreconcilable conflict with his court-

8      appointed attorney.

9            Ground 2 is exhausted.

10                    **3.      Grounds 3 and 4**

11           In ground 3, Keller argues that his counsel was ineffective for failing to

12     include important facts and argue key legal issues in his motion to suppress the

13     evidence found in his car and apartment. (ECF No. 20 at 11.) And in ground 4,

14     as discussed previously, Keller argues that his trial counsel was ineffective for

15     failing to request an adverse inference instruction based on the destruction of the

16     body camera footage. (*Id.* at 12.) Keller argues that grounds 3 and 4 are

17     technically exhausted but procedurally defaulted and that he can overcome the

18     default under *Martinez v. Ryan.* (ECF No. 32 at 12.)

19           A claim may be considered procedurally defaulted if "it is clear that the

20     state court would hold the claim procedurally barred." *Sandgathe v. Maass,* 314

21     F.3d 371, 376 (9th Cir. 2002). Keller would face several procedural bars if he were

22     to return to state court. *See, e.g.,* Nev. Rev. Stat. §§ 34.726 & 34.810. Nevada has

23     cause and prejudice and fundamental miscarriage of justice exceptions to its

24     procedural bars, which are substantially the same as the federal standards. If a

25     petitioner has a potentially viable cause-and-prejudice or actual-innocence

26     argument under the substantially similar federal and state standards, then

27     petitioner cannot establish that "it is clear that the state court would hold the

28     claim procedurally barred." *Sandgathe,* 314 F.3d at 376. For that reason, the

1    courts in this district have generally declined to find a claim subject to
2    anticipatory procedural default unless the petitioner represents that he would be
3    unable to establish cause and prejudice in a return to state court. In such a case,
4    the claim would generally be subject to immediate dismissal as procedurally
5    defaulted, as the petitioner would have conceded that he has no grounds for
6    exception to the procedural default in federal court.

7         A different situation is presented, however, where the Nevada state courts
8    do not recognize a potential basis to overcome the procedural default arising from
9    the violation of a state procedural rule that is recognized under federal law. In
10   *Martinez v. Ryan,* the Supreme Court held that the absence or inadequate
11   assistance of counsel in an initial-review collateral proceeding may be relied upon
12   to establish cause excusing the procedural default of a claim of ineffective
13   assistance of trial counsel. 566 U.S. 1, 9 (2012). The Nevada Supreme Court does
14   not recognize *Martinez* as cause to overcome a state procedural bar under Nevada
15   state law. *Brown v. McDaniel,* 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada
16   habeas petitioner who relies upon *Martinez*—and only *Martinez*—as a basis for
17   overcoming a state procedural bar on an unexhausted claim can successfully
18   argue that the state courts would hold the claim procedurally barred but that he
19   nonetheless has a potentially viable cause-and-prejudice argument under federal
20   law that would not be recognized by the state courts when applying the state
21   procedural bars.

22        Here, Keller advances only *Martinez* as a basis for excusing the anticipatory
23   default of grounds 3 and 4. (*See* ECF No. 32 at 12–14.) Accordingly, the Court
24   considers grounds 3 and 4 to be technically exhausted and procedurally
25   defaulted. Keller demonstrates cause under *Martinez* because he had no counsel
26   during his initial-review collateral proceeding. Thus, this Court finds that Keller
27   has arguably met three of the elements under *Martinez*: (1) he had no counsel
28   during his initial-review collateral proceeding, (2) his state post-conviction

1    petition was the initial proceeding regarding claims of ineffective assistance of

2    trial counsel, and (3) Nevada law requires that a claim of ineffective of assistance

3    of trial counsel be raised in a post-conviction habeas corpus proceeding. However,

4    because the analysis of prejudice under *Martinez* to overcome the procedural

5    default of grounds 3 and 4 is necessarily intertwined with the merits of those

6    grounds, the Court defers a determination of the fourth element of *Martinez*:

7    whether the claims of ineffective assistance of trial counsel are substantial.

8                       **4.    Ground 5**

9        In ground 5, Keller argues that the cumulative effect of the errors at trial

10   violated his right to due process in violation of the Fifth, Sixth, and Fourteenth

11   Amendments. (ECF No. 20 at 14.) Keller raised a cumulative trial-court-error

12   claim on direct appeal. (*See* ECF No. 27-30 at 9–10.) And Keller raised a

13   cumulative counsel-error claim during his post-conviction appeal. (*See* ECF No.

14   28-40 at 19.) However, as Respondents correctly note, Keller has not presented

15   an all-encompassing cumulative error claim to the state courts.

16       Keller contends that this Court should conduct a cumulative error analysis

17   because "[t]he failure to undertake this analysis would contravene Supreme

18   Court and Ninth Circuit precedent." (ECF No. 32 at 15.) However, cumulative

19   errors claims are not exempt from exhaustion requirements. *See Wooten v.*

20   *Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008). As such, this Court finds that

21   ground 5 is unexhausted to the extent that it includes grounds 3 and 4, which

22   were not presented within Keller's direct appeal cumulative error claim.

23       Accordingly, because Keller's second-amended petition contains both

24   exhausted and unexhausted claims, Keller has three options for going forward:

25   (1) he may submit a sworn declaration voluntarily abandoning the unexhausted

26   portion of ground 5, (2) he may return to state court to exhaust the unexhausted

27   portion of ground 5, in which case his federal habeas petition will be denied

28

10

1   without prejudice,[2] or (3) he may file a motion asking this court to stay his

2   exhausted federal habeas claims while he returns to state court to exhaust the

3   unexhausted portion of ground 5.[3] *See Rose v. Lundy*, 455 U.S. 509, 510 (1982)

4   (holding that a federal court may not entertain a habeas petition unless the

5   petitioner has exhausted available and adequate state court remedies with

6   respect to all claims in the petition).

7   **III.   CONCLUSION**

8   It is therefore ordered that Respondents' Motion (ECF No. 25) is denied as

9   follows: (1) ground 4 relates back and is timely, (2) grounds 1 and 2 are

10   exhausted, (3) grounds 3 and 4 are technically exhausted and procedurally

11   defaulted, and (4) ground 5 is unexhausted to the extent that it includes grounds

12   3 and 4. The court defers consideration of whether Keller can demonstrate

13   prejudice under *Martinez v. Ryan* to overcome the procedural default of grounds

14   3 and 4 until after the filing of an answer and reply in this action.

15   It is further ordered that Keller has 30 days from the date of this order to

16   inform the Court how he wishes to proceed on the unexhausted portion of ground

17   5 as outlined in this order. If Keller chooses to file a motion for a stay and

18   abeyance or seek other appropriate relief, Respondents may respond according

19   to Local Rule 7-2.

20   It is further ordered that if Keller elects to abandon the unexhausted

21   portion of ground 5, pursuant to this Court's scheduling order [ECF No. 11],

22   Respondents have 60 days from the date of abandonment in which to file an

23   answer to the second-amended petition. Keller will then have 30 days following

24   the filing of an answer to file a reply.

25

26   [2]This Court makes no assurances as to the timeliness of any future-filed petition.
   [3]If Keller wishes to ask for a stay, he must file a motion for stay and abeyance in
27   which he demonstrates good cause for his failure to exhaust his unexhausted
   claim in state court and presents argument regarding the question of whether or
28   not his unexhausted claim is plainly meritless.

1    It is further ordered that the Clerk substitute Nethanjah Breitenbach for

2 Respondent Timothy Garrett.

3

4

5    DATED THIS 3rd day of January 2024.

6

7

8 _____

9 ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12